UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**KIRK B. REISBECK,**

        Debtor.

Case No. **13-60925-13**

***MEMORANDUM OF DECISION***

    At Butte in said District this 13th day of February, 2014.

    After due notice, hearing was held at Great Falls on January 10, 2014, on the United States of America, Internal Revenue Service's ("IRS") motion to lift automatic stay nunc pro tunc, filed on August 22, 2013 (Document No. 34), which requests relief from the stay nunc pro tunc to allow the IRS to retain $25,050.26 obtained post-petition from Debtor's insurance commissions, based upon a pre-petition levy, to be applied to Debtor's outstanding tax liability, and on Debtor's motion for turnover (Doc. 21) of the commissions, which were delivered by Debtor's employer to the IRS in response to the levy. The Debtor filed an objection to the IRS's motion and was represented at the hearing by attorney Gary S. Deschenes ("Deschenes") of Great Falls. The IRS filed an objection to Debtor's motion for turnover and was represented by assistant United States attorney George F. Darragh Jr. ("Darragh"). No testimony or exhibits were admitted. Both counsel stated at the hearing that the parties agree about the material facts. After hearing statements from counsel the Court took both motions under advisement. After review of the record and applicable law, these matters are ready for decision. For the reasons set forth below the IRS's motion to lift stay nunc pro tunc will be denied, and Debtor's motion for turnover of the $25,050.56 in commissions will be granted.

1

This Court has jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Debtor's motion for turnover and the IRS's motion to lift the stay are core proceedings under 28 U.S.C. § 157(b)(2)(E) and (G).

## FACTS

Counsel for Debtor and the IRS each stated that the parties agree about the material facts, which the Court discerns from the motions and documents on the case docket. Debtor Kirk B. Reisbeck ("Reisbeck") is self employed as an insurance agent for Farmers Insurance, and earns commissions on the sale of insurance.

Reisbeck filed a previous chapter 13 bankruptcy, No. 05-62325-13. In that case his plan was confirmed on September 13, 2005. After several modifications, Reisbeck completed payments under his confirmed plan and received a discharge in Case No. 05-62325-13 on April 12, 2011. That case was closed on June 3, 2011. The chapter 13 trustee's final report and account in No. 05-62325-13 states that the United States Treasury was paid $60,257.91 on its priority claim.

The IRS attempted to negotiate an installment agreement with Reisbeck to pay his outstanding federal tax liability. No agreement was reached, so the IRS levied Reisbeck's commissions from Farmers Insurance. According to the IRS, initially Farmers Insurance did not respond to the IRS's levy, but later Farmers Insurance agreed to send the IRS the funds after the IRS issued a notice and demand letter to Farmers Insurance on or about May 28, 2013.

However, before Farmers Insurance sent the IRS the funds, Reisbeck filed another voluntary Chapter 13 petition commencing the instant case on June 30, 2013. He converted the case to Chapter 11 in November 2013, and since has reconverted back to Chapter 13.

2

Farmers Insurance made out a check dated July 2, 2013, payable to the United States Treasury in the amount of $25,050.56, and the check was posted to the IRS's account on July 9, 2013. Prior to depositing the check, the IRS did not file a motion to modify the stay, and this Court did not enter an Order modifying the stay authorizing the IRS to deposit the commission check.

Debtor filed his Schedules and Statements on July 23, 2013, signing and declaring under penalty of perjury that he read them and that they are true and correct. Debtor lists a total value of assets in the sum of $1,006,761.47, and total liabilities in the sum of $1,059,823.49. Schedule E lists no priority claims. Schedule F lists the IRS as having an unsecured, nonpriority claim for income taxes from 2005-2013 in the amount of $258,000, which Reisbeck marked as owed along with a codebtor. The Statement of Financial Affairs ("SOFA") states that the Debtor lost $35,000 in the one year preceding commencement of the case gambling in local casinos, and lost another $9,600 gambling in the Montana Lottery.

On August 7, 2013, Debtor filed a motion for turnover of the $25,050.56 sent by Farmers Insurance to the United States Treasury, and for sanctions.[1] Debtor argued that the IRS's obtaining and retention of the funds violates the automatic stay, and requested that the Court order the IRS to return the $25,050.56 to the Debtor.

The IRS filed an objection to Debtor's motion for turnover on August 22, 2013, with its motion to modify the stay nunc pro tunc. The IRS argues that its federal tax lien attached to the Debtor's commissions under federal statutes and regulations, that the IRS was entitled to claim the commissions because of the prepetition levy, and that it should be entitled to retain the

---

[1] Debtor withdrew the motion for sanctions on November 5, 2013.

3

$25,050.26 unless the Debtor provides adequate protection of the IRS's interest in the funds, citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209 (1983). The IRS denies violating the stay because its levy was issued prepetition, and that it is seeking nunc pro tunc relief from the stay to apply the $25,050.26 against Debtor's tax debt.

The IRS filed its original Proof of Claim No. 2 on July 26, 2013, asserting a claim in the amount of $318,005.74 for the years 2007 through 2010, including penalties and interest, and secured by tax liens recorded beginning in 2009 against Debtor's real estate, motor vehicle and other property. The claim includes a secured claim in the amount of $207,601.57, an amount entitled to priority under 11 U.S.C. § 507(a)(8) in the amount of $106,587.68, and an unsecured amount of $3,816.49. The IRS filed an amended Claim 2 on November 4, 2013, asserting a claim in the total amount of $274,919.27. Amended Claim 2 includes a secured claim in the amount of $207,601.57, a priority claim for taxes in the amount of $63,033.08, and an unsecured nonpriority component in the amount of $4,284.62. The attachments to the IRS's amended Claim 2 include the same notices of tax liens recorded in the years 2009, 2010, 2011, and 2012. The Debtor has not filed an objection to the IRS's Claim 2.

## DISCUSSION

The Debtor's filing of his Chapter 13 bankruptcy petition on June 30, 2013, gave rise to an "automatic stay." 11 U.S.C. § 362(a)(3), (4), (5), and (6).[2] The Ninth Circuit has stated

---

[2] Section 362(a) provides that the filing of a petition operates as a stay of –

\* \* \* \*

3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against

4

repeatedly the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002); *Hillis Motors, Inc. v. Haw. Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993). The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp. (In re The Minoco Group of Companies)*, 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

*See In re Wardrobe*, 559 F.3d 932, 934 (9th Cir. 2009), *quoting Gruntz.*

No dispute exists that the IRS received the $25,050.56 in Debtor's insurance commissions from Farmers Insurance and posted the check to its account, without first seeking and obtaining relief from this Court from the stay. In the Ninth Circuit actions taken in violation of the automatic stay are considered void ab initio. *In re Gasprom, Inc.*, 500 B.R. 598, 604 (9th Cir. BAP 2013); *Wardrobe*, 559 F.3d at 934; *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. D. Mont. 1998); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 586 (9th Cir. 1993).

---

property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title

The Debtor disputes that the IRS is a secured creditor as a result of its postpetition levy, since the levy violated the automatic stay. Debtor denies that the IRS lacks adequate protection, and denies that the wrongfully levied-upon $25,000 is cash collateral. Debtor contends that the $25,000 is necessary for the Debtor's effective reorganization.

Debtor moves for turnover of the $25,000. "Section 542(a) enables the bankruptcy trustee, or the debtor-in-possession in a reorganization case to seek turnover of the debtors' assets, for the benefit of the estate." *In re Hernandez*, 483 B.R. 713, 725 (9th Cir. BAP 2012).

The Federal tax lien statute imposes a lien in favor of the United States upon "all property and rights to property, whether real or personal, belonging to" any delinquent taxpayer. 26 U.S.C. § 6321 (2009) (formerly 26 U.S.C.A. 3670 (1956)). A Federal tax lien applies not only to property belonging to a taxpayer as of the date of demand or date when the collector receives the assessment, but also includes property acquired thereafter and owned by the delinquent at any time during the life of the lien. *Glass City Bank v. United States*, 326 U.S. 265, 268, 66 S.Ct. 108, 90 L.Ed. 56 (1945). The lien "arise[s] at the time the assessment is made" and "continue[s] until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied ..." 26 U.S.C. § 6322 (2009). United States' tax liens are perfected upon assessment; no further action is required. *United States v. Vermont*, 377 U.S. 351, 355, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). Federal tax liens are also effective against any other person who may hold an interest in the property. 26 U.S.C. §§ 6321, 6323(a); *Drye v. United States*, 528 U.S. 49, 50, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1995).

The instant case presents a case of federal statutes in conflict, which in this Circuit has

been decided in favor of bankruptcy statutes over tax laws. Actions taken by the IRS enforcing tax laws may be violations of the automatic stay. *In re Fuller*, 134 B.R. 945, 948 (9th Cir. BAP 1990). The parties in *Fuller* had similar positions as in the instant case. As summarized by the BAP:

> The statute establishing the federal tax lien and the automatic stay create an apparent conflict between federal tax law and bankruptcy law. Thus the Government, implying that federal tax law overrides bankruptcy law, argues that the lien reaches the inheritance despite the automatic stay. In contrast, the Debtors, asserting bankruptcy law, argue that the automatic stay prevents the lien from attaching to the post-petition acquisition.
>
> This conflict, at least as to dischargeable taxes, has been resolved in favor of the debtors and federal bankruptcy law.

*Fuller*, 134 B.R. at 947.

The BAP wrote:

> [T]he Supreme Court has rejected the argument that the IRS is implicitly entitled to special treatment, stating 'We see no reason why a different result should obtain when the IRS is the Creditor. [*U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 209, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1982)].

*Fuller*, 134 B.R. at 948.

The BAP commented that, as to dischargeable taxes, the general rule is that a prepetition lien for dischargeable taxes does not attach to postpetition acquisitions. *Fuller*, 134 B.R. at 947-48; *In re Braund,* 423 F.2d 718, 719 (9th Cir. 1970), *cert. denied*, *U.S. v. McGugin*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). In another case, *In re Wade Cook Financial Corp.*, 375 B.R. 580, 591-92 (9th Cir. BAP 2007), and quoting *Fuller*, the BAP repeated that the IRS is not granted a "special status" in the Bankruptcy Code:

> There is nothing in the Bankruptcy Code that grants the IRS a special status above and beyond other creditors whose rights of setoff are subject to the

>requirements of [11 U.S.C. § 553]. *See* [*Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 781 (2nd Cir. 1996)] (finding that, although a federal treasury statute granted priority to IRS setoffs over other government agencies' setoffs, it does not circumvent the requirements of § 553, which requires a creditor, in order to have its right to setoff preserved in bankruptcy, to show that the setoff involves a prepetition mutual debt). *Cf. United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (Although the IRS had a right to levy on the debtor-in-possession's property pursuant to IRS § 6331, the statute did not transfer ownership of the property to the IRS; thus, the IRS, though a governmental unit, was still subject to § 542(a) to the same extend as any other secured creditor, obligating it to turn over the property, as "[n]othing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien."); *United States v. Fuller (In re Fuller)*, 134 B.R. 945, 948 (9th Cir. BAP 1992) (finding that the IRS is not entitled to be excepted from the automatic stay provisions of § 362, in a case where the IRS tried to attach a prepetition tax lien, pursuant to IRC § 6321, against funds inherited by the debtor 120 days after the petition date) (citing *Whiting Pools*, 462 U.S. at 209, 103 S.Ct. 2309).

*Wade Cook*, 375 B.R. at 591-92.

The above-quoted authority shows that *Whiting Pools*, cited in reliance by the IRS, rejects the argument that the IRS is entitled to special treatment in bankruptcy based upon its tax liens. *Fuller*, 134 B.R. at 948. The facts are agreed that the IRS received and deposited the $25,050.56 in commissions owed to the Debtor, without first requesting and being granted relief from the stay. The IRS has moved for nunc pro tunc relief from the stay, and § 362(d) vests this Court with discretion to grant appropriate relief, including retroactive annulment of the stay.

Section 362(d)(1) allows for the granting of relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" *Veal*, 450 B.R. at 897. This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000):

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances. The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause". What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166. *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*See also Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 921 (9th Cir. BAP 2009); *Edwards v. Wells Fargo Bank, N.A.*, 454 B.R. 100, 106 (9th Cir. BAP 2011).

Section 362 vests this Court with broad discretion in granting relief from the stay for cause under § 362(d). *Edwards*, 454 B.R. at 107; *Groshong v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 542 (9th Cir. 2010); *In re Delaney-Morin*, 304 B.R. 365, 369-70 (9th Cir. BAP 2003); *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999); *In re Plummer*, 20 Mont. B.R. 468, 477-78 (Bankr. D. Mont. 2003); *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108-109 (9th Cir. 1995).

As the party seeking relief, the IRS must first establish that cause exists for relief under § 362(d)(1). *United States v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. BAP 2009), citing *Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 206 B.R. 196, 200 (9th Cir. BAP 1996). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is not warranted. *Id.* The IRS seeks relief from the stay on the grounds it lacks adequate protection on its secured claim. Debtor moves for turnover of the $25,050.56 to use in his reorganization. "In enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which

9

adversely alter creditors' contractual and nonbankruptcy rights." *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074-75 (9th Cir. 2002). Thus, the Code protects the Debtor with the stay and provides for turnover of funds to utilize in his reorganization, even if it adversely alters the IRS's nonbankruptcy rights, so that a repayment or reorganization plan can be developed. *Wardrobe*, 559 F.3d at 936; *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985).

The IRS seeks nunc pro tunc relief from the stay. By annulling the automatic stay, the bankruptcy court may validate an act that would otherwise be void as a violation of the automatic stay. *In re Boni*, 240 B.R. 381, 385 (9th Cir. BAP 1999). *In re Kissinger*, 72 F.3d at 108-09 provides:

> Despite the importance of the automatic stay as a vital protection of the bankruptcy debtor, see *In re Schwartz*, 954 F.2d 569, 571 (9th Cir.1992), 11 U.S.C. § 362(d)(1) allows a bankruptcy court to grant relief from the automatic stay "for cause." Such relief may include "terminating, annulling, modifying, or conditioning such stay." *Id.* § 362(d). Thus, as we have previously noted, " section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Schwartz*, 954 F.2d at 572 (citing 2 Collier on Bankruptcy, ¶ 362.07 (15th ed. 1984)). Retroactive annulment, however, should be "applied only in extreme circumstances." *In re Shamblin*, 890 F.2d 123, 126 (9th Cir.1989).

*See In re Deines*, 17 Mont. at 116.

The Ninth Circuit BAP later wrote that the standard is not "extreme circumstances," but instead entails a "balancing of the equities" test on a "case-by-case" basis in which the bankruptcy court has "wide latitude" that will not be upset in the absence of abuse of discretion. *In re Fjeldsted*, 293 B.R. 12, 15, 23, 24 (9th Cir. BAP 2003); *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Wast Corp.)*, 129 F.3d 1052, 1054-55 (9th Cir. 1997, *cert. denied*,

524 U.S. 952, 118 S.Ct. 2368, 141 L.Ed.2d 736 (1998).

While several factors may be considered, the general trend is for a court to focus on two factors in determining whether cause exists to annul the stay: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor has engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *Fjeldsted*, 293 B.R. at 24, quoting *Nat'l Evntl. Wast Corp.*, 129 F.3d at 1055. As to the first factor, the IRS's motion states that the $25,050.56 check from Farmers Insurance was dated July 2, 2013, after the petition date, and that the revenue officer released the IRS levy on July 3, 2013, because Reisbeck filed his bankruptcy petition on June 30, 2013. The BNC certificate of mailing the notice of commencement of the case states that the IRS received electronic transmission service on July 2, 2013. Thus, the record shows that despite notice of the bankruptcy filing, the IRS proceeded to post the $25,050.56 check to its account on July 9, 2013. As to the first factor, the creditor IRS was aware of the bankruptcy petition.

The second factor considers whether the debtor has engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. The IRS argues that the Debtor failed to pay his taxes while at the same time losing large amounts of money gambling at casinos and the Montana lottery. Those gambling activities, however, are legal and revenue-producing activities in the State of Montana, and as such the Court does not consider them unreasonable or inequitable conduct.

As to whether prejudice would result to the creditor, the Court returns to the IRS's powerful rights based on the tax lien statutes, outside of bankruptcy. Its tax liens are asserted on the Debtor's real estate, motor vehicle and other property. The Debtor has not objected to the

IRS's amended Claim 2 so it is deemed allowed, and Debtor has not initiated an adversary proceeding challenging the validity of the IRS's tax liens. The IRS's priority claim of $106,587.68 must be paid in a plan proposed under either chapter 13 or chapter 11. 11 U.S.C. § 1322(a)(2); 11 U.S.C. § 1129(a)(9)(C) & (D). The IRS's priority tax claims are not dischargeable. 11 U.S.C. § 523(a)(1)(A).

In considering whether prejudice would result to the creditor IRS if nunc pro tunc relief is not granted, this Court concludes that the IRS is more likely to receive payment on its claims if the Debtor has the $25,050.56 to reorganize his debts in a repayment plan. Debtor's previous completed chapter 13 plan in Case No. 05-62325-13 resulted, according to the trustee's final report, in payment to the United States Treasury of $60,257.91 on its priority claim. The Court deems it appropriate to give the Debtor the opportunity to reorganize and propose another repayment plan to give him the chance to pay the IRS his tax debt.

The BAP cited *Fjeldsted* in *In re Gasprom, Inc.*, 500 B.R. 598, 607 (9th Cir. BAP 2013) and repeated the list of factors which can be used as a general guideline for assessing the equities:

> 1. Number of filings;
> 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
> 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
> 4. The Debtor's overall good faith (totality of circumstances test);
> 5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
> 6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
> 7. The relative ease of restoring parties to the status quo ante;
> 8. The costs of annulment to debtors and creditors;

        9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
        10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
        11. Whether annulment of the stay will cause irreparable injury to the debtor;
        12. Whether stay relief will promote judicial economy or other efficiencies.

*Gasprom,* 500 B.R. at 607.

Although counsel stated the relevant facts are agreed, the Court has little evidence before it relevant to several of the above-listed factors. This appears to be Reisbeck's second bankruptcy filing. The Court sees no evidence of circumstances which indicate an intention to hinder and delay creditors any more than in any reorganization or adjustment case. No evidence exists of record of prejudice to creditors other than the IRS, or to third parties if the stay relief is not made retroactive. The IRS is protected by its tax liens and priority claim status, and its priority claims are not dischargeable. No evidence exists in this record that the Debtor is not proceeding in good faith, and that the Debtor is not in compliance with the Bankruptcy Code and Rules.

According to the IRS's motion it knew of the stay on July 2, 2013, when it received electronic notice, but it posted the check from Farmers Insurance to its account on July 9, 2013. The Debtor waited almost a month to file his motion for turnover of the $25,050.56, although it appears the parties were in negotiations. The IRS did not move for relief from the stay nunc pro tunc until August 22, 2013. Thus, after learning of the bankruptcy the IRS proceeded to take the step of depositing the check in continued violation of the stay, and the IRS did not move immediately for nunc pro tunc relief. Restoring parties to the status quo ante is relatively easy

since the funds remain in the IRS's possession.

As to the costs of nunc pro tunc relief to the Debtor and other creditors, nunc pro tunc relief from the stay likely will cause irreparable injury to the Debtor, according to his contention that he needs the $25,050.56 to reorganize. The IRS offered no evidence to the contrary. No evidence exists tending to show whether stay relief will promote judicial economy or other efficiencies. In all likelihood granting nunc pro tunc relief would seriously impair Debtor's ability to reorganize.

Having considered the factors from *Gasprom* and *Fjeldsted* and having balanced the equities, this Court concludes that nunc pro tunc relief from the stay as requested by the IRS is not an appropriate exercise of the Court's discretion, and that Debtor's motion for turnover of the $25,050.56 should be granted and the IRS's motion for nunc pro tunc relief from the stay should be denied so that the Debtor may proceed to propose a repayment plan. The IRS is adequately protected by its tax liens and priority and nondischargeable status of much of its claim, which apparently continues to accrue interest and penalties.

**IT IS ORDERED** a separate Order shall be entered pursuant to the above: (1) Denying IRS's motion to lift automatic stay nunc pro tunc, filed on August 22, 2013 (Doc. 34); and (2) granting Debtor's motion for turnover by the IRS of $25,050.56 in Debtor's insurance commissions (Doc. 21).

BY THE COURT

*/s/ Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana